## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ALABAMA EDUCATION ASS'N,** *et al.,* **DELAWARE FEDERATION OF TEACHERS,** *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>**ELAINE L. CHAO, Secretary, U.S. Department of Labor, in her official capacity,**<br><br>Defendant,<br><br>**(Consolidated Cases)** | **Civil Action No. 03-253 (RMC)**<br>**Civil Action No. 03-682 (RMC)** |

## MEMORANDUM OPINION

On March 31, 2005, this Court held that an organization that represents or is comprised entirely of public-sector employees, but that is subordinate to an entity that also represents private-sector employees, is not a "labor union" as that term is understood under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.* ("LMRDA"), because such an interpretation "would slip the LMRDA loose from its moorings in the private sector and be contrary to the plain meaning of the statute, its legislative history, and the congressional purpose behind the law." *Ala. Educ. Ass'n v. Chao*, No. 03-0253 & 03-0682, 2005 U.S. Dist. LEXIS 5662, at *2 (D.D.C. Mar. 31, 2005) [Dkt. # 35]. On appeal, the U.S. Court of Appeals for the D.C. Circuit concluded that although the Plaintiff state education associations ("SEAs") and state federations of teachers ("SFTs") "well may have the better reading of the statute," the Department of Labor's interpretation of the LMRDA is "by no means an impermissible one," and may therefore be entitled

to *Chevron*[1] deference.  *Ala. Educ. Ass'n v. Chao*, 455 F.3d 386, 395 (D.C. Cir. 2006).  The D.C.

Circuit further held, however, that "[a]lthough the Department's revised reading of the LMRDA is

otherwise entitled to *Chevron* deference, the Department has failed to supply a reasoned analysis

supporting its change of position."  *Id.* at 397.  When an agency adopts a materially changed

interpretation of a statute, the agency must provide a reasoned analysis for its change of position in

order for its new interpretation to be accorded *Chevron* deference by the courts.  *Id.* at 392.  The

Court of Appeals therefore remanded the rule to the Department "for a reasoned explanation of" the

Department's changed interpretation of the statute, and remanded the case to this Court to determine

in the first instance whether the Department's explanation is reasoned.  *Id.* at 397.

Determining that, on remand, it was tasked to decide the limited question of whether

the Secretary of Labor "presents a reasoned analysis for her choice between two permissible

interpretations of a statutory ambiguity," this Court granted the Department's Second Motions for

Summary Judgment on March 27, 2008, concluding that the Secretary did provide a reasoned, after-

the-fact explanation for her changed interpretation.  *See Ala. Educ. Ass'n v. Chao*, 539 F. Supp. 2d

378, 379 (D.D.C. 2008) [Dkt. ## 54 & 55].  The SEAs and SFTs have filed motions for

reconsideration, arguing that the Court's Opinion misconstrued the threshold issue remanded by the

Court of Appeals, and were the Court to frame the issue as Plaintiffs have suggested, Plaintiffs

would be entitled to summary judgment.  *See* Pl. State Educ. Ass'ns' Mot. for Recons. [Dkt. # 56]

& Pls. Del. Fed'n of Teachers Mot. for Recons. [Dkt. # 57].  The Court concludes that it properly

framed the question presented to it on remand, and therefore will not reconsider the Plaintiffs'

arguments that were already presented and considered in their cross motions for summary judgment.

---

[1] *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Separately, the SEAs argue that the Court erred by not ruling on the question left open by the Court of Appeals: "whether 'associations of individual employees rather than associations of labor unions . . . are "conference[s], general committee[s], joint or system board[s], or joint council[s]" ' under 29 U.S.C. § 402(i)." Mem. in Supp. of Pl. State Educ. Ass'ns' Mot. for Recons. ("Pl. SEAs' Mem.") at 2 (quoting *Ala. Educ. Ass'n*, 355 F.3d at 397 n.*). The Court clarifies its ruling on this point but concludes that an association of individual employees constitutes a "labor organization" under 29 U.S.C. § 402(i). Accordingly, Plaintiffs' motions for reconsideration will be denied.

## I. LEGAL STANDARD

Rule 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e) (emphasis added). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A Rule 59(e) motion is not "simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it an avenue for a "losing party . . . to raise new issues that could have been raised previously." *Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993).

## II. ANALYSIS

Plaintiff SEAs and SFTs argue that reconsideration of the Court's Opinion and Order granting summary judgment to the Secretary is necessary to "prevent manifest injustice." *See* Pl.

SEAs' Mem. at 3. The SEAs request that the Court "address arguments made by the SEAs that the Court may have overlooked in framing and disposing of the threshold issue presented on remand from the Court of Appeals." *Id.* The SFTs join in this request. *See* Mem. in Support of Pls. Del. Fed'n of Teachers Mot. for Recons. ("Pl. SFTs' Mem.") at 4. The SEAs raise an additional argument that the Court did not "rule on a discrete and potentially dispositive issue unique to the SEAs that was timely raised by the SEAs in their summary judgment papers but not addressed by this Court in its Memorandum Opinion." Pl. SEAs' Mem. at 3.

### A.      Whether the Court Properly Framed the Issue on Remand

The SEAs and SFTs argue that the Court was led astray by the Department from the true "threshold issue" on remand from the D.C. Circuit. Their argument is summarized in the following two sentences:

> [t]he threshold question on remand from the Court of Appeals is not—as the DOL urged based on a misstatement of the Court of Appeals' holding, and as this Court then assumed for purposes of its analysis—whether the DOL on remand made a rational "policy choice" in favor of a changed interpretation of § 3(j)(5) that the Court of Appeals had already determined is a "reasonable resolution" of the ambiguity in § 3(j)(5). Rather, the threshold question on remand is whether—taking full account of the new explanation tendered by the DOL on remand for its changed interpretation, and using "traditional tools of statutory interpretation" to evaluate the legal sufficiency of the new explanation . . .—the DOL's changed interpretation *is* a "reasonable resolution" of the ambiguity in § 3(j)(5) that is entitled to judicial deference under *Chevron.*

Pl. SEAs' Reply [Dkt. # 59] at 7-8 (emphasis in original).

The Court finds no support for Plaintiffs' interpretation of the D.C. Circuit's decision. Indeed, the D.C. Circuit's mandate to this Court was unambiguous. After determining in a clearly contained section of its opinion entitled "*Chevron* Step One" that Section 3(j)(5) is ambiguous, the Court of Appeals "proceed[ed] to . . . *Chevron* Step Two." *See Ala. Educ. Ass'n*, 455 F.3d at 393-95.

In its *Chevron* Step Two analysis, the Court of Appeals held that "the Department's position . . . is, from a purely grammatical standpoint, by no means an impermissible one.  And we have made clear that '[a]n agency's interpretation of a statute is entitled to no less deference . . . simply because it has changed over time.'"  *Id.* at 396 (quoting *Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision*, 373 F.3d 1355, 1360 (D.C. Cir. 2004)) (alterations in original).  The Court of Appeals further stated that the "question raised by the change is whether the Department has supported its new reading of § 3(j)(5) with a 'reasoned analysis' sufficient to command our deference under *Chevron*."  *Ala. Educ. Ass'n*, 455 F.3d at 396.  It concluded that the Department had failed to do so. *Id.* at 397.  The Court of Appeals summed up its *Chevron* Step Two analysis by stating that "we cannot say the Department's interpretation of § 3(j)(5) is impermissible, but neither can we say its decision to revise its reading of the [LMRDA] is supported by a reasoned analysis."  *Id.*  In its conclusion, the Court of Appeals remanded "'[the rule] to the Department . . . for a reasoned explanation of that change.'"  *Id.* (quoting *AFL-CIO v. Brock*, 835 F.2d 912, 920 (D.C. Cir. 1987)) (alterations in original).  The Court of Appeals' directive to this Court was clear and unambiguous; after agency remand, the Court was to determine whether the Secretary presented a reasoned analysis for her changed interpretation of the statute.  *See Ala. Educ. Ass'n*, 455 F.3d at 397.  Plaintiffs' argument that this Court was misled by the Department to frame the issue on remand more narrowly than the Court of Appeals intended is without merit.  The Court will therefore deny SEAs' and SFTs' motions for reconsideration.

> **B.  Whether Associations of Individual Employees are "Labor Unions" under the Second Clause of § 3(i) and § 3(j)(5) of the LMRDA**

The D.C. Circuit left open the question "whether 'associations of individual employees rather than associations of labor unions . . . are "conference[s], general committee[s],

joint or system board[s], or joint council[s]" ' under 29 U.S.C. § 402(i)," and thus "labor organizations" for purposes of the LMRDA. *Ala. Educ. Ass'n*, 355 F.3d at 397 n.*. This Court stated in a footnote in its Memorandum Opinion filed on March 27, 2008 that it "agrees with the Secretary" that the list provided in the Second Clause of Section 3(j)(5) and Section 3(i) of the LMRDA is "[only] illustrative" of the types of organizations that can constitute a subordinate labor organization or "intermediate body" under the LMRDA. Mar. 27, 2008 Mem. Op. at 3 n.3 [Dkt. # 54]. The SEAs argue that this footnote did not decide the precise issue left open by the D.C. Circuit. Pl. SEAs' Mem. at 4. With respect to that issue, the SEAs argued in their second motion for summary judgment [Dkt. # 42] that they "fall outside the LMRDA's coverage even under the [Department's] changed statutory interpretation, because as associations of individual employees rather than associations of labor unions, the SEAs are not 'conference[s], general committee[s], joint or system board[s], or joint council[s]' under the Second Clause of § 3(i) and § 3(j)(5)." Mem. in Supp. of Pl. SEAs' Second Mot. for Summ. J. at 25. [Dkt. # 42].

Section 3(j)(5) of the LMRDA lists the types of organizations which, if subordinate to a national or international labor organization, can constitute a "labor organization." *See* 29 U.S.C. § 402; *see also* 29 C.F.R. § 451.4(f). The Court already has accepted the Department's interpretation that the intermediate bodies listed in Section 3(j)(5) – "conference, general committee, joint or system board, or joint council" – are "included in the [LMRDA] as words of illustration, not of limitation." *See* Mar. 27, 2008 Mem. Op. at 3 n.3. The text of the statute, however, does not address whether an intermediate body composed solely of employees fits within that illustrative list. The text is therefore ambiguous as to the scope of bodies covered by Section 3. Similarly, the legislative histories of the Second Clause of Section 3(i) and Section 3(j)(5) are far from clear.

In their Minority Report regarding the Senate version of the bill that ultimately became the LMRDA, S. 1555, Senators Goldwater and Dirksen protested that "some of the worst manifestations of corruption and racketeering in the labor movement were to be found in organizations which are associations of labor unions rather than of individual employees, such as conferences, joint boards, state and district labor counsels, etc." *See* S. Rep. No. 187 on S. 1555 as reported, *reprinted in* Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, Vol. I, at 497-98 (U.S. Gov't Printing Office 1959). Senator Goldwater further remarked on the Senate floor that the committee bill did not cover these organizations because it

> defines a "labor organization" as one in which employees participate and which exists in whole or in part for the purposes of engaging in collective bargaining. Obviously, since a conference or joint board is not made up of employees and does not engage in collective bargaining, it is not a labor organization within the meaning of the committee bill.

Apr. 23, 1959 Cong. Rec., *reprinted in* Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, Vol. II, at 1121.

The SEAs argue that Senator Goldwater's statements "leave no doubt that his sole concern was that absent an appropriate amendment to the Senate committee bill, private sector 'associations of labor unions' . . . would escape LMRDA coverage." Mem. in Supp. of Pl. SEAs' Second Mot. for Summ. J. at 24. In their view, the Second Clause of Sections 3(i) and 3(j)(5) did not address or concern associations of employees. Moreover, the SEAs contend that the Department erroneously interprets the phrase "conference, general committee, joint or system board, or joint council" in the Second Clause of Sections 3(i) and 3(j)(5) as if it were synonymous with the phrase "intermediate labor body." *Id.* at 25. They assert that the Department offers no explanation why these terms are synonymous, and they further argue that because Congress was familiar with the term

"intermediate bodies," as evidenced by Section 401(d) of Title IV of the LMRDA, 29 U.S.C. § 481(d) ("Section 401(d)"), its use of the "more limited phrase 'conference, general committee, joint or system board, or joint council' in the Second Clause of § 3(i) and § 3(j)(5) buttresses the conclusion that Congress was not referring to intermediate bodies generally in those definitional provisions, but only to [a] subgroup of intermediate bodies."  Mem. in Supp. of Pl. SEA's Second Mot. for Summ. J. at 27.

The SEAs do not dispute that an "intermediate body" may be composed of individual or organizational members, or both.  *See* Mem. in Supp. of Def.'s Second Mot. for Summ. J. at 17 n.8 [Dkt. # 43] ("The SEAs acknowledge that they are 'intermediate bodies' because they are 'second-tier labor organization[s] in a three-tier union structure.'").  The question, therefore, is whether the illustrative lists in Sections 3(i) and 3(j)(5) were meant to include all "intermediate bodies" that are subordinate to a national or international labor organization, including associations of individual employees, or whether the phrase is confined to associations of labor unions.  The Department notes that its interpretation in 29 C.F.R. § 451.4(f) that the list of labor organizations in the Second Clause of Section 3(i) are "words of illustration, not of limitation," is derived from Section 401(d) which refers to "intermediate bodies, *such as* general committees, system boards, joint boards, or joint councils."  *See* 29 U.S.C. § 481(d) (emphasis added).  Because the Department's interpretation that the lists in Sections 3(i) and 3(j)(5) are merely illustrative and not limiting is derived from Section 401(d), which employs nearly identical language, the Department's interpretation is a reasonable effort to provide a cohesive view of the LMRDA.

Furthermore, Senator Goldwater's emphasis on "associations of labor unions" notwithstanding, on the day that the LMRDA was enacted, he explained that the Second Clause of

Section 3(i) was necessary because "[f]ailure to include such an amendment would have meant that these so-called *intermediate labor bodies* would have been exempted from the bill's many restrictions, requirements, and sanctions designed to achieve the minimum of necessary reform in labor unions."  Statement of Senator Goldwater, 105 Cong. Rec. 19,757 (1959) (emphasis added). This statement arguably supports the conclusion that the amendment was meant to include all "intermediate labor bodies" or "intermediate bodies," and not just associations of unions.

In conformity with the Department's view that the definitional sections of the LMRDA should be read "to include all labor organizations of any kind other than those clearly shown to be outside the scope of the LMRDA," 29 C.F.R. § 451.2, the Department has construed "conference[s], general committee[s], joint or system board[s], [and] joint council[s]" to be illustrative of intermediate bodies generally.  *See* 29 C.F.R. § 451.4(f).  And because the LMRDA contemplates that an "intermediate body" may be composed of individual or organizational members, or both, *see* 29 U.S.C. § 481; *see also* 29 C.F.R. § 451.3(b), under the Department's permissible interpretation of the statute, "associations of individual employees," such as the SEAs, constitute "intermediate bodies" and consequently, "labor organizations," for purposes of the LMRDA.  The SEAs are therefore subject to the requirements of the LMRDA.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff SFTs and SEAs motions for reconsideration [Dkt. ## 56 & 57] will be denied.  A memorializing order accompanies this Memorandum Opinion.


Date: February 4, 2009                         /s/
                                   ROSEMARY M. COLLYER
                                   United States District Judge